## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINSVILLE DIVISION

**GERVON DEXTER, SR.**

     **Plaintiff**

**vs.**
                          **CASE NO.**

**BIG LEAGUE ADVANCE FUND II, LP**

     **Defendant**

_____ /

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Gervon Dexter, Sr. ("Dexter"), by and through undersigned counsel, and asserts his Complaint for Declaratory Judgment against Defendant Big League Advance Fund, II ("Defendant"). In support of the same, Dexter states as follows. Dexter and Defendant are herein collectively referred to as the "Parties."

## JURISDICTION AND VENUE

1.     This is an action for declaratory relief under 28 U.S.C. § 2201.

2.     This Court has subject matter jurisdiction over this cause under 28 U.S.C. § 1332(a)(1), as the Parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.

3.     Under Fla. Stats. §§ 48.193(1)(a)(1) and 48.193(2), this Court has personal jurisdiction over Defendant. Defendant operated, conducted, engaged in, or carried on business activities within the State of Florida. Defendant is engaged in substantial and not isolated activity within the State of Florida.

4.     This Court is the proper venue for the disposition of this lawsuit under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Dexter's claim(s) occurred in this judicial district.

## THE PARTIES

5.     Dexter is a natural person who is a citizen of the State of Illinois.

6.     Defendant is a foreign limited partnership incorporated and maintaining its principal place of business and is a citizen of the State of Delaware.

7.     Upon information and belief, Michael Schwimer ("Schwimer") is a partner of Defendant and is a natural person who is a citizen of the State of Maryland.

8.     Upon information and belief, Big League Advance, LLC, is a partner of Defendant and is a limited liability company formed under the laws of the State of Delaware.

## MATERIAL FACTS

**I.     THE ATHLETE AGENT STATUTE**

9.     In 2002, the Florida Legislature passed statutory provisions concerning Athlete Agents in Florida (the "Athlete Agent Statute"). *See* Fla. St. § 468.451, *et seq*.

10.     When the Legislature passed the Athlete Agent Statute, the Legislature explicitly outlined its intent as follows:

> The Legislature finds that *dishonest or unscrupulous practices by agents* who solicit representation of student athletes can cause significant harm to student athletes and the academic institutions for which they play. *It is the intent of the Legislature to protect the interests of student athletes and academic institutions by regulating the activities of athlete agents.*

Fla. St. § 468.451 (emphasis added).

11.     The Athlete Agent Statute defines an "Athlete Agent" as a person:

> Who, directly or indirectly, recruits or solicits a student athlete to enter into an agent contract, or who, for any type of financial gain, procures, offers, promises, or

attempts to obtain employment or promotional fees or benefits for a student athlete with a professional sports team or as a professional athlete, or with any promoter who markets or attempts to market the student athlete's athletic ability or athletic reputation.

*See* Fla. St. § 468.452(2).

12.     The Athlete Agent Statute further defines a "Student Athlete" as:

Any student who resides in Florida, has informed, in writing, a college or university of the student's intent to participate in that school's intercollegiate athletics, or who does participate in that school's intercollegiate athletics and is eligible to do so.

*See* Fla. St. § 468.452(5)(a).

13.     The Athlete Agent Statute defines an "Agent Contract" as a contract or agreement in which a Student Athlete authorizes an Athlete Agent to represent the student in the marketing of the student's athletic ability or athletic reputation. See Fla. St. § 468.452(1).

14.     Under the Athlete Agent Statute, any person practicing as an Athlete Agent in Florida must be licensed to do so. *See* Fla. St. § 468.453(1).

15.     Concerning Agent Contracts, the Agent Athlete Statute provides in relevant part:

An agent contract must contain, in close proximity to the signature of the student athlete, a conspicuous notice in boldface type in capital letters stating:

**WARNING TO STUDENT ATHLETE**

1. YOU MAY LOSE YOUR ELIGIBILITY TO COMPETE AS A STUDENT ATHLETE IN YOUR SPORT;

2. IF YOU HAVE AN ATHLETIC DIRECTOR, WITHIN 72 HOURS AFTER ENTERING INTO THE CONTRACT, YOU AND YOUR ATHLETE AGENT MUST NOTIFY YOUR ATHLETIC DIRECTOR; AND

3. YOU MAY CANCEL THIS CONTRACT WITHIN 14 DAYS AFTER SIGNING IT. HOWEVER, CANCELLATION OF THIS CONTRACT MAY NOT REINSTATE YOUR ELIGIBILITY.

*See* Fla. St. § 468.454(3) (emphasis in original).

16.     Under the Athlete Agent Statute, an Agent Contract that does not conform to the Athlete Agent Statute is voidable by the Student Athlete:

> An agent contract that does not conform to this section is voidable by the student athlete. If a student athlete voids an agent contract, the student athlete *is not* required to pay any consideration or return any consideration received from the athlete agent to induce the student athlete to enter into the contract.

*See* Fla. St. § 468.454(4) (emphasis added).

17.     Under the Athlete Agent Statute, within seventy-two (72) hours after entering into an Agent Contract, an Athlete Agent must give notice to the athletic director of the educational institution at which the Student Athlete is enrolled about the existence of the Agent Contract:

> Within 72 hours after entering into an agent contract or before the next scheduled athletic event in which the student athlete may participate, whichever occurs first, *the athlete agent must* give notice in a record of the existence of the contract to the athletic director of the educational institution at which the student athlete is enrolled or the athlete agent has reasonable grounds to believe the student athlete intends to enroll.

*See* Fla. St. § 468.454(6) (emphasis added).

18.     Under the Athlete Agent Statute, an Athlete Agent shall not enter into an Agent Contract that purports to or takes effect at a future time after the Student Athlete no longer has remaining eligibility to participate in intercollegiate athletics. Such a contract is void and unenforceable:

> An athlete agent shall not enter into an agent contract *that purports to or takes effect at a future time after the student athlete no longer has remaining eligibility to participate in intercollegiate athletics*. Such a contract is *void and unenforceable*.

*See* Fla. St. § 468.454(11) (emphasis added).

19.     An Agent Contract between a Student Athlete and a person not licensed under the Athlete Agent Statute is void and unenforceable:

> An agent contract between a student athlete and a person not licensed under this part is *void and unenforceable*.

- 4 -

*See* Fla. St. § 468.454(12) (emphasis added).

## II. THE NIL STATUTE

20.     On July 1, 2021, the Florida Legislature enacted a statute ("the NIL Statute") allowing intercollegiate athletes in the State of Florida to profit from their name, image, and likeness ("NIL").

21.     The NIL Statute (Fla. St. § 1006.74) articulates the Florida Legislature's intent in enacting the statute as follows:

> The Legislature finds that intercollegiate athletics provide intercollegiate athletes with significant educational opportunities. However, participation in intercollegiate athletics should not infringe upon an intercollegiate athlete's ability to earn compensation for her or his name, image, or likeness. *An intercollegiate athlete must have an equal opportunity to control and profit from the commercial use of her or his name, image, or likeness, and be protected from unauthorized appropriation and commercial exploitation of her or his right to publicity, including her or his name, image, or likeness.*

Fla. St. § 1006.74 (emphasis added).

22.     Under the NIL Statute, compensation may not be provided in exchange for an Intercollegiate Athlete's athletic performance. *See* Fla. St. § 1006.74(2)(a). The NIL Statute provides in relevant part:

> *To preserve the integrity, quality, character, and amateur nature of intercollegiate athletics and to maintain a clear separation between amateur intercollegiate athletics and professional sports, such compensation may not be provided in exchange for athletic performance* or attendance at a particular institution and may only be provided by a third party unaffiliated with the intercollegiate athlete's postsecondary educational institution.

Fla. St. § 1006.74(2)(a) (emphasis added).

23.     An intercollegiate athlete's contract for compensation for the use of his or her name, image, or likeness *may not* violate [the NIL Statute]. Fla. St. § 1006.74(2)(g) (emphasis added).

PD.42940246.1

24.     The NIL Statute provides that an Intercollegiate Athlete cannot enter a NIL Contract if a term of the contract conflicts with a term of the Intercollegiate team's team contract:

> *An intercollegiate athlete may not enter into a contract for compensation for the use of her or his name, image, or likeness if a term of the contract conflicts with a term of the intercollegiate athlete's team contract.* A postsecondary educational institution asserting a conflict under this paragraph must disclose each relevant contract term that conflicts with the team contract to the intercollegiate athlete or her or his representative.

Fla. St. § 1006.74(2)(h) (emphasis added).

25.     Under the NIL Statute, a NIL contract cannot extend beyond an Intercollegiate Athlete's eligibility at an Athletic Program at a Postsecondary Educational Institution:

> The duration of a contract for representation of an intercollegiate athlete or compensation for the use of an intercollegiate athlete's name, image, or likeness *may not extend beyond her or his participation in an athletic program at a postsecondary educational institution.*

Fla. St. § 1006.74(2)(j) (emphasis added).

26.     The NIL Statute defines an "Intercollegiate Athlete" as a student who participates in an Athletic Program. *See* Fla. St. § 1006.74(1)(b).

27.     An "Athletic Program" is defined under the NIL Statute as an intercollegiate Athletic Program at a State university, a Florida College System institution, or a private college or university receiving aid under Chapter 1009. *See* Fla. St. § 1006.74(1)(a) and Fla. St. § 1006.74(1)(c).

28.     The University of Florida is a member of the National Collegiate Athletic Association ("NCAA").

29.     The NCAA is a nonprofit organization that regulates college athletics among its 1,100 member institutions.

30.     Because the University of Florida is an NCAA member, it is subject to NCAA rules.

31.     At the time Florida adopted the NIL Statute, the NCAA had in place rules, as set forth in the NCAA's Division I Manual, that prescribed the terms and conditions under which student athletes could maintain his or her eligibility to participate in amateur collegiate athletics. Rule 12.1.2 of the NCAA Division 1 Manual provided that an individual would lose amateur status and not be eligible for intercollegiate competition if the individual, after initial full-time collegiate enrollment, entered into a professional draft.

32.     After Florida passed the NIL Statute, states around the country followed suit and passed similar NIL laws.

33.     In June/July 2021, in response to the surge of NIL legislation around the country, the NCAA adopted an interim policy concerning intercollegiate athletes' ability to profit and benefit from their NIL.

34.     As part of the interim policy, the NCAA noted that intercollegiate athletes could engage in NIL activities that were *consistent with the law of the state where their school was located*. ***See* Exhibit 1**. (emphasis added).

35.     In December 2021, the University of Florida released guidelines governing its intercollegiate athletes' opportunity to profit from their NIL. In compliance with the NIL Statute, the University of Florida mandated that "the duration of a contract for representation of student-athlete or compensation for the use of Name, Image and Likeness *may not extend beyond participation in athletic program at institution*." ***See* Exhibit 2**. (emphasis added).

36.     The University of Florida also mandated that "NIL agreements must be based on an independent, case-by-case analysis of the value that each athlete brings to an NIL agreement as opposed to providing compensation or incentives for enrollment decisions (e.g., signing a letter of intent or transferring), *athletic performance* (e.g., points scored, minutes played, winning a

contest), achievement (e.g., starting position, award winner) or membership on a team" and required that "an athlete agent representing a student-athlete for purposes of securing compensation for her or his name, image, likeness, or persona *must be licensed in the State of Florida*." ***See* Exhibit 2** (emphasis added).

III.    **GERVON DEXTER, DEFENDANT, AND THE AGREEMENT**

37.    On June 7, 2020, Dexter enrolled at the University of Florida under an athletic scholarship, becoming an intercollegiate student athlete under Florida law.

38.    As a sophomore in 2021, Dexter became the starting defensive tackle for the Florida Gators and played in all thirteen (13) games.

39.    Because of Dexter's athletic performance and reputation during his sophomore year, the prospect of Dexter playing in the National Football League ("NFL") increased.

40.    In May 2022, when Dexter was entering his junior season, an authorized agent of Defendant, Scott McBrien ("McBrien"), communicated the following to Dexter:

> What's up Gervon! I'm a partner at a data & analytics firm here in Washington, DC. We have a 6 figure financial/NIL opportunity for you. Would love to discuss more if you're interested. Let me know what you think. 🏈

41.    Defendant advertised itself as an investment fund that provides student athletes with "the resources they need to help make their dream a reality." Under Defendant's typical arrangement with student athletes, Defendant pays the athletes for their athletic performance, and the athlete is allowed to keep the payments regardless of whether they ultimately play professionally. If the athlete plays professionally, the athlete must share with the Defendant the income he or she receives from playing professional sports.

42.    Schwimer is Defendant's Chief Executive Officer (CEO) and an authorized agent of Defendant.

43.     Upon information and belief, Defendant, McBrien, and Schwimer are not licensed in Florida as Athlete Agents.

44.     On or about May 16, 2022, at or about 7:58 P.M. EST, Defendant provided Dexter with a NIL and/or Athlete Agent Contract (the "Agreement"). *See* **Exhibit 3**.

45.     Dexter executed the Agreement on May 17, 2022, at 9:52 AM EST. *See* **Exhibit 3**.

46.     Schwimer executed the Agreement on May 17, 2022, at 11:53 AM EST. *See* **Exhibit 3**.

47.     The Agreement did not contain the conspicuous notice in close proximity to Dexter's signature that is required by the Athlete Agent Statute. *See* **Exhibit 3**.

48.     The Agreement authorizes Defendant to "utilize [Dexter's] name, image, likeness, comments biographical information and athletic reputation (the 'NIL Services') as described [in the Agreement]…" *See* **Exhibit 3**.

49.     Pursuant to the terms of the Agreement, Defendant agreed to pay Dexter $436,485.00 (the "Fee") for Defendant's ability to use Dexter's NIL during the Initial Term and Extended Term. The Agreement states, "[i]n consideration for [Dexter's] NIL Services and other obligations described herein, including if applicable the Extended Term, [Defendant] shall pay [Dexter] [the Fee]." *See* **Exhibit 3**.

50.     The Agreement further provided that Dexter authorize Defendant to utilize his NIL and/or athletic reputation for the advertisement or publication of Defendant or its products or services, or otherwise in connection with the business of Defendant, including but not limited to, on Defendant's website, or in its promotional materials, and that Defendant shall have complete ownership of any image, recording, product, copy, presentation or other material created pursuant to such authorization, including all intellectual property rights. *See* **Exhibit 3**.

PD.42940246.1

51.     In partial consideration for the Fee, Dexter agreed to promote Defendant on his social media accounts, sign autographs, and make personal appearances at events on Defendant's behalf. *See* **Exhibit 3**.

52.     As referenced in paragraph 49 above, the Agreement contains two (2) terms. *See* **Exhibit 3**.

53.     The "Initial Term" lasted from the Agreement's effective date until Dexter was no longer eligible under NCAA rules, *i.e.*, when Dexter declared for the NFL Draft. *See* **Exhibit 3**.

54.     The "Extended Term" began immediately after Dexter was no longer eligible under NCAA rules until twenty-five (25) years after the effective date. *See* **Exhibit 3**.

55.     During the Initial Term, the Parties agreed that they would comply with Florida law and the rules and regulations of the University of Florida's athletic department. *See* **Exhibit 3**.

56.     In partial consideration for the Fee, in the event that Dexter later played in the NFL, he was required to pay Defendant fifteen (15%) percent of his pre-taxed NFL earnings ("Professional Football Earnings") for twenty-five (25) years. During the Extended Term, Defendant was under no obligation to Dexter. *See* **Exhibit 3**.

57.     When entering into the Agreement, Defendant understood that it must comply with all of the University of Florida athletic department's compliance rules and regulations, as well as Florida law governing the use of Dexter's name, image, likeness, comments, biographical information and/or athletic reputation. *See* **Exhibit 3.**

58.     Upon information and belief, after Dexter and Defendant executed the Agreement, Defendant did not provide notice to the University of Florida or Scott Stricklin, the University of Florida's Athletic Director, concerning the existence of the Agreement.

59.     On December 5, 2022, following completion of a strong junior season with the University of Florida football team, Dexter declared for the NFL Draft based on his athletic performance and reputation.

60.     When Dexter declared for the NFL Draft, he lost his eligibility as an Intercollegiate Athlete under applicable NCAA rules and Florida law.

61.     In March 2023, Dexter participated in the NFL Combine in Indianapolis, Indiana.

62.     On April 28, 2023, the Chicago Bears selected Dexter in the second round of the NFL Draft.

63.     On May 5, 2023, after the Chicago Bears drafted Dexter, Defendant, by and through its authorized agent, Victoria Lares ("Lares"), emailed Dexter reminding him about his contractual obligations under the Extended Term.  Lares is not licensed in Florida as an Athlete Agent.

## COUNT ONE
## DECLARATORY JUDGMENT

64.     Dexter adopts and incorporates Paragraphs 1-63 as if fully set out herein.

65.     The Agreement violates the NIL Statute, the NCAA's rules and regulations, and the University of Florida athletic department's rules, regulations, and by-laws.

### THE NIL STATUTE

66.     In the Agreement, Dexter allowed Defendant to use his NIL in exchange for the Fee. As such, the Agreement constitutes an NIL contract, which is governed by the NIL Statute. *See* Fla. St. § 1006.74.

67.     When Dexter executed the Agreement, he was an Intercollegiate Athlete at a Postsecondary Educational Institution, *i.e.*, the University of Florida. *See* Fla. St. § 1006.74(b).

68.     The Agreement violated the NIL Statute by providing for Defendant's payment of the Fee to Dexter in exchange for fifteen (15%) percent of Dexter's pre-taxed Professional Football

Earnings if, based on Dexter's athletic performance, he played in the NFL. *See* Fla. St. § 1006.74(2)(a).

69.     The Agreement violated the NIL Statute because the Agreement extended beyond Dexter's eligibility as an Intercollege Athlete at the University of Florida. *See* Fla. St. § 1006.74(2)(j).

70.     The Initial Term lasted from the Agreement's effective date (May 17, 2022) to December 5, 2022, when Dexter declared for the NFL Draft.

71.     The Extended Term began on December 5, 2022, and was to conclude on May 17, 2047, twenty-five (25) years after the Agreement's effective date, May 17, 2022. During the Extended Term, even after Dexter exhausted his eligibility as an Intercollegiate Athlete, Dexter was still obligated to perform "NIL Services."

72.     The Agreement violated the NIL Statute because the Agreement conflicts with the University of Florida's rules and guidelines concerning NIL contracts. *See* Fla. St. § 1006.74(2)(h). Specifically, in violation of the University of Florida's guidelines, Defendant paid Dexter the Fee in exchange for fifteen (15%) percent of Dexter's pre-taxed Professional Football Earnings if, based on his athletic performance, he played in the NFL; the Agreement extended beyond Dexter's participation in an Athletic Program at the University of Florida; and Defendant was not a licensed Athlete Agent in the State of Florida when it executed the Agreement.

73.     Because the Agreement violates the NIL Statute, Florida law and public policy, and the Legislature's intent, the Agreement is void as a matter of Florida law. *See* Fla. St. § 1006.74(2)(g).

## COUNT TWO
## DECLARATORY JUDGMENT

74.     Dexter adopts and incorporates Paragraphs 1-63 as if fully set out herein.

### ATHLETE AGENT STATUTE

75.     In the Agreement, Dexter authorized Defendant to represent him in the marketing of his athletic ability or reputation. As such, the Agreement constitutes an Agent Contract. *See* Fla. St. § 468.452(1).

76.     Defendant and/or its agent(s) acted as Athlete Agents when they either directly or indirectly, recruited or solicited Dexter to enter into the Agreement so that Defendant could market or attempt to market Dexter's athletic ability or athletic reputation. *See* Fla. St. § 468.452(2).

77.     When Dexter executed the Agreement, he was a Student Athlete at the University of Florida. *See* Fla. St. § 468.452(5)(a).

78.     The Extended Term went into effect after Dexter lost his eligibility as a Student Athlete. *See* Fla. St. § 468.454(11).

79.     When Dexter executed the Agreement, the Agreement did not contain the conspicuous notice as required by the Athlete Agent Statute. *See* Fla. St. § 468.454(3).

80.     Upon information and belief, Defendant never provided Scott Stricklin, the University of Florida's Athletic Director, notice of the Agreement.

81.     When Dexter and Defendant entered into the Agreement, neither Defendant nor its agents were licensed Athlete Agents in Florida. *See* Fla. St. § 468.454(6).

82.     Because the Agreement violates the Athlete Agent Statute, Florida law and public policy, and the Legislature's, it is therefore void and unenforceable as a matter of Florida law. *See* Fla. St. § 468.454(4)(11)&(12).

83.     Because the Agreement is void and unenforceable, Dexter is not required to return the Fee to Defendant. *See* Fla. St. § 468.454(4).

### RELIEF REQUESTED

PD.42940246.1

84.     Dexter adopts and incorporates Paragraphs 1-83 as if fully set out herein.

85.     Dexter requests an Order from the Court declaring that:

    a.     Because Defendant was an unlicensed Athlete Agent when it entered into the Agreement with Dexter, the Agreement is void and unenforceable under Fla. St. § 468.454(12);

    b.     Because the Agreement does not conform with the Athlete Agent Statute, under Fla. St. § 468.454(4), Dexter is not required to pay any compensation or return any compensation, *i.e.*, the Fee Dexter received from Defendant;

    c.     The Agreement, specifically the Extended Term, purports to or went into effect after Dexter no longer was eligible to participate in Intercollegiate Athletics in violation of Fla. St. § 468.454(11) and therefore, the Agreement is void and unenforceable;

    d.     The duration of the Agreement, specifically the Extended Term, extended beyond Dexter's participation in the athletic program at the University of Florida in violation of Fla. St. § 1006.74(2)(j);

    e.     The Agreement violates the NIL Statute in violation of Fla. St. § 1006.74(g), and therefore, the Agreement is void and unenforceable; and

    f.     Any other relief this Court deems just and proper.


Respectfully submitted,

**PHELPS DUNBAR LLP**


*s/ Nicholas C. Patti*

Rhett Parker / Fla. Bar No.: 92505
Caleb W. Diaz / Fla. Bar No. 1028488 *(admission pending)*
Nicholas C. Patti / Fla Bar No. 1038902
100 South Ashley Drive, Suite 2000
Tampa, Florida 33602
Telephone: 813 472 7550
Facsimile: 813 472 7570
Email: rhett.parker@phelps.com
Email: caleb.diaz@phelps.com
Email: nick.patti@phelps.com

*Attorneys for Plaintiff Gervon Dexter, Sr.*

**DEFENDANT TO BE SERVED AT:**

BIG LEAGUE ADVANCE FUND II, LP
C/O Corporation Service Company as Registered Agent
251 Little Falls Drive
Wilmington, Delaware 19808

PD.42940246.1