UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

GERVON DEXTER, SR.

       Plaintiff,                          CASE NO. 1:23-cv-00228-AW-HTC

vs.

BIG LEAGUE ADVANCE FUND II, LP,

       Defendant.

_____/

## DEFENDANT'S MOTION TO COMPEL ARBITRATION

Defendant Big League Advance Fund II, LP ("Defendant" or the "BLA Fund"), by and through its undersigned counsel, moves this Court to compel arbitration. The Athlete Agreement on which Plaintiff's claims are premised, and which he attached to his complaint, contains a valid, binding arbitration provision. For this reason, and as discussed in more detail below in the incorporated memorandum of law in support, the Court must compel this matter to arbitration under the parties' binding agreement. Once compelled to arbitration, the Court should dismiss this matter.

## PRELIMINARY STATEMENT

Now that he's made it to the NFL, Plaintiff Gervon Dexter Sr. ("Plaintiff" or "Mr. Dexter") does not want to live up to his end of his agreement with Big League Advance Fund II, LP and by extension the BLA Fund's manager, Big League Advance, LLC d/b/a Big League Advantage ("BLA"). The BLA Fund enters into agreements with college athletes to use their name, image and likeness ("NIL") to promote BLA's brand and to provide them with life-changing money to support

themselves while they chase their dream of reaching the highest professional league in their sport. For athletes that reach that highest level, the BLA Fund shares in their success by receiving a portion of their earnings. Here, the BLA Fund gave Mr. Dexter $436,485 when he was a sophomore college football player at the University of Florida with an uncertain future (there was no guarantee that he would have a successful season or that he would avoid significant injury). If, like the vast majority of the athletes the BLA Fund invests in, Mr. Dexter never made it to the highest professional level (here the NFL) he would have kept that money and never paid back a cent. But he agreed that if he did make it to the NFL, he would pay the BLA Fund a pre-negotiated portion of his NFL salary. Mr. Dexter also agreed that the BLA Fund could use his NIL to promote BLA's brand while he was in college (no different than any other NIL deal).

Now that Mr. Dexter beat the odds and made it to the NFL, however, he no longer wants to pay the BLA Fund any portion of his salary and seeks to disavow his agreement with the BLA Fund. To do so, he relies on a complaint (the "Complaint") rife with false and misleading statements. For example, the Complaint claims that the BLA Fund acted as an unregistered agent even though Mr. Dexter knew (and knows) that neither the BLA Fund nor BLA were (nor are) an agent, let alone *his* agent. Similarly, the Complaint claims that Mr. Dexter's NIL obligations continued after he was no longer an amateur, even though the agreement—which Mr. Dexter reviewed with his own legal counsel prior to signing—expressly states the exact opposite. The Complaint also suggests that Mr. Dexter's NIL agreement was not submitted to the University of Florida when, in fact, it was submitted and approved by the school (which said that the "Contract is solid" and that "Everything from an NCAA compliance standpoint is legal").

But all of this is a question for another day and, more importantly for purposes of the present motion, for another forum. That is because the agreement

2

Mr. Dexter is trying to get out of contains a mandatory arbitration provision requiring that **all** claims relating the agreement and his relationship with the BLA Fund be resolved in arbitration, including any claims relating to the "formation" of such agreement or relationship. The instant action falls squarely within the arbitration provision. This is the case even if Mr. Dexter is arguing the agreement is void as the arbitration provision contains a delegation clause stating that the arbitrator (and not a court) shall have "exclusive authority" to resolve all disputes relating to, among other things, the "enforceability" or "formation" of the agreement, including "any claim that all or any part" of the agreement is "void or voidable, or whether a claim is subject to arbitration." Put simply, this matter belongs in arbitration and there is no legitimate basis for Mr. Dexter to have filed this action in court in the first instance. Although there are several illegitimate bases to do so such as to exert public pressure on the BLA Fund—an action that foreseeably has caused BLA and the BLA Fund undue reputational and business harm. Accordingly, Defendant respectfully requests the Court send this matter to arbitration and dismiss this case consistent with the clear terms of the parties' agreement.

## BACKGROUND

### I.  BLA and Its Business

Defendant Big League Advance Fund II, LP is a fund operated by BLA, a company that provides athletes with resources to help them achieve their goals of becoming professional athletes. *See* Compl. ¶ 41 and Compl. Ex. 3. BLA's business model with respect to college athletes is to enter into deals to promote BLA's brand, providing athletes with capital that they can use for any purpose, whether it is to train, pay rent, buy groceries, support a family member or make investments to benefit their future. *See id.; see also* www.bigleagueadvantage.com/about. The athletes are expected to engage in the NIL activities during their time at school, and

keep the money the BLA Fund provides whether or not they ever make it to the professional league of their given sport (i.e., the NFL, MLB, WNBA, etc.). If they do not make it to a professional league, or their career is cut short, they are under no obligation to pay anything to the BLA Fund. *See* Compl. ¶ 41 and Compl. Ex. 3. The money remains theirs. For players who make it to the highest level in their given sport, however, the BLA Fund shares in their success by receiving an agreed upon portion of their league salary. *Id.*

## II. The Athlete Agreement Between the BLA Fund and Plaintiff

In May of 2022, the BLA Fund entered into such an agreement with Plaintiff who, at the time, was a sophomore at the University of Florida and a defensive tackle on the Florida Gators football team. *See* Compl. ¶¶ 38-40; ¶ 44; Compl. Ex. 3. The agreement between the BLA Fund and Dexter was titled "Athlete Agreement." Compl. Ex. 3, at 1. Under the terms of the Athlete Agreement, the BLA Fund made a cash payment to Plaintiff of $436,485 and agreed to contribute $5,000 to a charitable organization of Plaintiff's choosing (the "Fee"). *See id.* ¶ 1.1.

Under the Athlete Agreement, Plaintiff agreed to allow BLA to use Plaintiff's name, image, and likeness **to promote BLA's brand** (as opposed to for promoting Plaintiff). Specifically, the Athlete Agreement states that BLA could use Plaintiff's name, image, and likeness "for the advertisement or publication of BLA or its products or services, or otherwise in connection with the business of BLA." *Id.* ¶ 2.1. The Athlete Agreement expressly stated that these NIL services would expire once Plaintiff's eligibility to participate as a student-athlete pursuant to NCAA rules terminated. *See id.* ¶¶ 2.7, 10.1. Numerous other companies and

brands have entered into similar NIL deals with collegiate, and even high school, athletes.[1]

Consistent with BLA's business model, if Plaintiff did not make it to the NFL, he kept the Fee and owed the BLA Fund nothing. *See id.* ¶ 5.2. But, if (and only if) Plaintiff made it to the NFL, he agreed to pay the BLA Fund with 15% of his earnings as a professional football player. *Id.* ¶ 5.3.

The Athlete Agreement expressly stated that the BLA Fund was not providing any services to Plaintiff other than those set out in the Athlete Agreement. *See id.* ¶ 4.4. Specifically, the Athlete Agreement stated:

> 4.4. Obligations of BLA.  BLA shall have no duties to Player other than providing the Fee and complying with the terms and conditions of this Agreement.  BLA has no duty to provide advice or support to Player regarding his/her professional Football career or earnings, ***and is not acting as an agent or advisor.***

*Id.* (emphasis added). Consistent with the terms of the Athlete Agreement, the Complaint does not identify any agent services that the BLA Fund or BLA performed for Plaintiff (because there were none).

Most importantly here, the Athlete Agreement included a mandatory arbitration provision. *See id.* ¶ 9.1. The provision was presented in a section titled "**9. DISPUTE RESOLUTION**" under a subheading tiled "**9.1 Binding Arbitration**." The arbitration provision stated that, "[a]ll claims arising out of or relating to th[e] Agreement (including their formation, performance, and breach), the Parties' relationship with each other shall be finally settled by binding arbitration administered by JAMS." *Id.* It further noted that "[t]he arbitrator, and not any federal, state or local court . . . shall have exclusive authority to resolve all disputes

---

[1] https://businessofcollegesports.com/name-image-likeness/nikes-nil-deals-full-list-of-nike-high-school-and-college-athletes/

arising out of or relating to the . . . enforceability or formation of these terms, including, but not limited any claim that all or any part of these terms are void or voidable, or whether a claim is subject to arbitration." *Id.* The arbitration provision also required that "[t]he arbitration proceedings and arbitration award shall be maintained by the Parties as strictly confidential, except as is otherwise required by court order or as is necessary to confirm, vacate or enforce the award." *Id.* The Athlete Agreement designated Delaware law as the law applicable to the agreement. *Id.* ¶ 9.3.

## III. Plaintiff's Improper Complaint

On September 1, 2023, Plaintiff initiated this action in this Court. Plaintiff alleges that Defendant violated Florida's NIL statute because Plaintiff was obligated to perform NIL services after his college eligibility ended (which is false) and that Defendant violated Florida's agent athlete statute by acting as Plaintiff's agent (which is also false). Based on this, Plaintiff seeks an order that the Athlete Agreement is "void and unenforceable." Compl. ¶ 85. Notwithstanding the existence of the mandatory arbitration provision, Plaintiff chose to initiate this action in federal court. In doing so, the Complaint makes no mention of even the existence of the mandatory arbitration provision, let alone explain why Plaintiff believes it does not apply to the instant dispute. That is because the arbitration provision does apply and this dispute should be in arbitration.

## ARGUMENT

## I. Legal Standard

Under the Federal Arbitration Act ("FAA"), upon a motion by either party to an arbitration agreement, courts must compel arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4. The FAA embodies the "liberal federal policy favoring arbitration" as another way to resolve disputes and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility*

*LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and quotation marks omitted). The FAA "requires courts to 'rigorously enforce agreements to arbitrate' according to their terms." *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1210 (11th Cir. 2011) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)); *accord Concepcion*, 563 U.S. at 339.

Courts faced with a motion to compel arbitration must engage in a two-step inquiry. The first step is determining whether the parties agreed to arbitrate the dispute in question. *Klay v. All Defs.*, 389 F.3d 1191, 1200 (11th Cir. 2004). The second step is determining whether "legal constraints external to the parties' agreement foreclosed arbitration." *Id.* (citation omitted); *see also PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002)). The FAA "leaves no place for the exercise of discretion by a district court" in that regard. *Dean Witter Reynolds, Inc.*, 470 U.S. at 218. Courts must resolve any "doubts concerning the scope of arbitrable issues … in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). The party seeking to avoid arbitration has the burden of showing the arbitration provision is unenforceable. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000); *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1238 (11th Cir. 2008).

Plaintiff cannot meet that burden as the requirements to compel arbitration are easily met here.

## II.   Plaintiff Entered Into an Arbitration Agreement

Plaintiff agreed to arbitrate this dispute. Because arbitration provisions are contractual in nature, the question of whether Plaintiff and the BLA Fund entered into an agreement to arbitrate is evaluated under Delaware law since that is the law designated in the Athlete Agreement. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("[I]n determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts."). Under Delaware law, "overt manifestation of assent—not subjective intent—controls the formation of a contract." *Indus. Am., Inc. v. Fulton Indus., Inc.*, 285 A.2d 412, 415 (Del. 1971). Where "the putative contract is in the form of a signed writing, that document generally offers the most powerful and persuasive evidence of the parties' intent to be bound." *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1230 (Del. 2018).

Here, Plaintiff overtly manifested intent to enter into and be bound by the Athlete Agreement. Plaintiff signed the Athlete Agreement on May 17, 2022 at 9:52 AM EST. *See* Compl. ¶ 45, Compl. Ex. 3 at 18. When doing so, he initialed a statement saying that he "fully underst[ood] the terms and conditions of the Agreement" and that he "had the opportunity to be represented by an attorney . . . and other professional representatives of my choosing in the review, negotiation, and execution of the Agreement and performance of my obligations thereunder." Compl. Ex. 3 at A-1. He also accepted the Fee the BLA Fund paid to him pursuant to the terms of the Athlete Agreement. *See* Compl. ¶ 49.

These actions are more than sufficient to demonstrate Plaintiff's agreement to enter into and be bound by the Athlete Agreement. *See Rem OA Holdings, LLC v. N. Gold Holdings, LLC*, 2023 WL 6143042, at *19 (Del. Ch. Sept. 20, 2023) ("As a matter of ordinary course, parties who sign contracts and other binding

documents, or authorize someone else to execute those documents on their behalf, are bound by the obligations that those documents contain."); *Osborn ex rel. Osborn v. Kemp,* 991 A.2d 1153, 1158 (Del. 2010) ("The face of this contract manifests the parties' intent to bind one another contractually."); *Kirkwood Motors, Inc. v. Conomon,* 2001 WL 112054, at *2 (Del. Super. Ct. Feb. 5, 2001) ("By signing the agreement, the Conomons were also indicating their intent to be bound by its terms.").

      The result would be no different if the Court were to apply Florida law to the question of whether a binding contract between Plaintiff and the BLA Fund was formed (which it should not do). Under Florida law, contract formation requires "mutual assent to certain and definite contractual terms." *Adams v. Lashify, Inc.* 2023 WL 5573822, at *3 (M.D. Fla. Aug. 29, 2023) (citation omitted). As under Delaware law, the fact that Plaintiff signed the Athlete Agreement demonstrates that assent. *See D.L. Peoples Grp., Inc. v. Hawley*, 804 So. 2d 561, 563 (Fla. 1st DCA 2002) ("Where one contracting party signs the contract, and the other party accepts and signs the contract, a binding contract results."); *see also Mandell v. Fortenberry*, 290 So. 2d 3, 7 (Fla.1974) ("There is a presumption that the parties signing legal documents are competent, that they mean what they say, and that they should be bound by their covenants."); *Dodge of Winter Park, Inc. v. Morley*, 756 So. 2d 1085, 1085–86 (Fla. 5th DCA 2000) ("Generally, it is enough that the party against whom the contract is sought to be enforced signs it.").

      Put simply, whether Delaware or Florida law is applied, Plaintiff assented to and agreed to be bound by the Athlete Agreement containing the mandatory arbitration provision.

### III. Any Challenge to the Arbitrability of this Matter is for the Arbitrator to Decide

The finding that Plaintiff assented to the Athlete Agreement should be the end of this Court's inquiry because the arbitration provision in the Athlete Agreement delegates exclusive authority to resolve all disputes about the Athlete Agreement to the arbitrator—including disputes about whether the agreement is enforceable or a claim is subject to arbitration. Thus, once the Court determines that the Plaintiff has entered into the Athlete Agreement containing such a delegation clause, it must send the matter to arbitration without reaching the merits of any attempt to contest its enforceability or applicability of the arbitration provision.

Both the Supreme Court and the Eleventh Circuit have held that where parties to an arbitration agreement have agreed that the arbitral tribunal may decide the scope of its jurisdiction, questions of arbitrability are for the arbitrator and not the court. In *Henry Schein, Inc. v. Archer and White Sales, Inc*., 139 S. Ct. 524 (2019), the Supreme Court held that "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id*. at 530. This is the case "even if the court thinks that the argument that arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at 529. The Eleventh Circuit likewise has found that "[i]n the face of the parties' agreement to arbitrate gateway issues concerning the interpretation, applicability, enforceability, and formation" of an arbitration agreement, courts are "not free to pass judgment on the wisdom or efficacy of the provision in the first instance and should have compelled arbitration." *Jones v. Waffle House, Inc*., 866 F.3d 1257, 1271 (11th Cir. 2017). Parties may delegate these threshold questions to an arbitrator as long as their arbitration agreement does so in "clear and

unmistakable" language. *Henry Schein*, 139 S. Ct. at 530 (citation omitted); *Jones*, 866 F.3d at 1267. The parties did so here.

The arbitration provision in the Athlete Agreement easily meets the clear and unmistakable standard. The arbitration provision expressly states that "[t]he arbitrator, and not any [court] . . . shall have **exclusive** authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these terms, including, but not limited to, any claim that all or any part of these terms are void or voidable, ***or whether a claim is subject to arbitration***." Compl. Ex. 3 ¶ 9.1 (emphasis added). This is nearly the exact language *Jones* found "evinced a clear intent to arbitrate gateway issues." *Jones*, 866 F.3d at 1271 (noting that delegation clause there stated "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable"). If anything, the delegation clause here is even clearer and more unmistakable because it says the arbitrator shall have "exclusive" authority ***and*** expressly identifies questions of "whether a claim is subject to arbitration" as being delegated to the arbitrator. *See* Compl. Ex. 3 ¶ 9.1.

Numerous other courts have found language even less clear and unmistakable sufficient to require delegation of threshold issues to the arbitrator. *See, e.g., Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1145, 1148 (11th Cir. 2015) (committing to arbitration "any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement"); *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014) (committing to arbitration "any and all disputes arising out of or in connection with this Agreement, including any question regarding its existence, validity, or termination"); *In re Checking Acct. Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1255 (11th Cir. 2012) (committing to

arbitration "[a]ny issue regarding whether a particular dispute or controversy is ... subject to arbitration") (alteration in original).

The caselaw is thus clear that even if Plaintiff's position is that this matter is not subject to arbitration for some reason (an argument which has no merit), the Court must nevertheless compel arbitration so that the arbitrator may decide that question in the first instance. *See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) (rejecting argument that enforceability of an arbitration agreement should turn on Florida public policy and contract law and holding that all "challenge[s] to the validity of the contract as a whole . . . must go to the arbitrator"); *see also Serra v. Saturn of Clearwater, Inc.,* 2008 WL 5412213, at *5 (M.D. Fla. Dec. 29, 2008) (argument that because a contract provision "is illegal and contrary to public policy [] therefore the entire contract, including the arbitration clause is void, and of no effect" is precluded by *Cardegna*).

### IV.    Plaintiff's Claim is Within the Scope of the Arbitration Agreement

Although the Court need not (and should not) reach the issue, Plaintiff's claims unquestionably fall within the scope of the arbitration provision, mandating that this dispute be resolved in arbitration. The FAA requires courts to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted). "The FAA 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115 (11th Cir. 2014) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25).

Here, the parties agreed to broad arbitration language, covering "[a]ll claims arising out of or relating to th[e]Agreement (including their formation, performance, and breach) [and] the parties' relationship with each other." Compl.

12

Ex. 3, ¶ 9.1. The provision then specifically notes that the arbitrator shall resolve disputes relating to the "interpretation, applicability, enforceability, or formation of the[] terms" including "any claim that all or part of these terms are void or voidable." *Id.* ¶ 9.1(c). The Complaint here falls squarely within the ambit of the arbitration provision. The Complaint claims that the agreement is "void" and "unenforceable" because its terms violate Florida's NIL and Athlete Agent statutes. *See* Compl. ¶¶ 68–69, 79, 82–83. These are unquestionably disputes about the "Agreement" including its "formation," not to mention its "enforceability" and whether all or part of the agreement is "void or voidable." Thus, if the Court were inclined to reach the question of whether Plaintiff's claim falls within the scope of the parties' arbitration agreement, it clearly does. Either way, the Court should compel arbitration as Plaintiff expressly agreed to arbitration when he contracted to receive nearly half-a-million dollars from the BLA Fund.

**V.     Upon Compelling Arbitration, the Court Should Dismiss the Complaint**

If the Court agrees that Plaintiff must arbitrate the claims in his Complaint and therefore grants the motion to compel, no live dispute will remain to be resolved in this forum and the Court should therefore dismiss the case. *See Olsher Metals Corp. v. Olsher*, 2003 WL 25600635, at *9 (S.D. Fla. Mar. 26, 2003), *aff'd*, 2004 WL 5394012 (11th Cir. Jan. 26, 2004) ("A case in which arbitration has been compelled may be dismissed in the proper circumstances, such as when all the issues raised in court must be submitted to arbitration.") (cleaned up); *see also Perera v. H & R Block E. Enters., Inc.*, 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012); *Kivisto v. Nat'l Football League Players Ass'n*, 2011 WL 335420 (S.D. Fla. Jan. 31, 2011), *aff'd*, 435 F. App'x 811 (11th Cir. 2011); *Caley v. Gulfstream Aerospace Corp.*, 333 F. Supp. 2d 1367, 1379 (N.D. Ga. 2004) (compelling arbitration and dismissing the case), *aff'd*, 428 F.3d 1359 (11th Cir. 2005); *Athon v. Direct Merchants Bank*, 2007 WL 1100477, at *6 (M.D. Ga. Apr. 11, 2007), *aff'd*,

251 F. App'x 602 (11th Cir. 2007). That is the proper course in this case where no portion of any dispute Plaintiff has with the BLA Fund is (or could be) exempted from the mandatory arbitration provision.

## CONCLUSION

The terms of the parties' agreement are clear that any and all disputes about the agreement or the parties' relationship must be resolved in arbitration. This is just such a dispute. Accordingly, this court should compel this matter to arbitration and dismiss these proceedings.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(K), Defendant respectfully requests a hearing on this Motion. Defendant estimates that a hearing on its Motion would take no more than one hour of the Court's time.

Dated:  October 13, 2023                Respectfully submitted,

                                                        **ZWILLGEN PLLC**

                                                        By:  /s/ Kelsey Harclerode
                                                            Kelsey Harclerode
                                                            Florida Bar No. 1048280
                                                            Jeffrey Landis (*pro hac vice forthcoming*)
                                                            Adya Baker (*pro hac vice forthcoming*)
                                                            1900 M Street NW, Suite 250
                                                            Washington, DC 20036
                                                            kelsey@zwillgen.com
                                                            jeff@zwillgen.com
                                                            adya@zwillgen.com

                                                            *Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

In accordance with Local Rule 7.1(B) and (C), the undersigned hereby states that Counsel for Defendant conferred with counsel for Plaintiff on October 12, 2023 via telephone, in a good faith effort to resolve the issues presented and the relief requested in this Motion. As of the filing of this Motion, counsel were unable to reach an agreement.

/s/ Kelsey Harclerode
Kelsey Harclerode

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F), the undersigned hereby states that this memorandum contains 4,027 words as calculated by Microsoft Word, including headings, footnotes and quotation, but not including case caption, signature block and certificates.

/s/ Kelsey Harclerode
Kelsey Harclerode

**CERTIFICATE OF SERVICE**

      I certify that on this 13th day of October 2023, a true and accurate copy of the foregoing was electronically filed with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notice of Electronic Filing.

      /s/ Kelsey Harclerode
      Kelsey Harclerode (Florida Bar No. 1048280)

**SERVICE LIST**

Rhett Parker
Caleb W. Diaz
Nicholas C. Patti
PHELPS DUNBAR LLP
100 South Ashley Drive, Suite 2000
Tampa, Florida 33602
Telephone: 813 472 7550
Facsimile: 813 472 7570
Email: rhett.parker@phelps.com
Email: caleb.diaz@phelps.com
Email: nick.patti@phelps.com

*Attorneys for Plaintiff*